Barbara Louderback, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Bristol Township School District, Respondents.

Barbara Louderback, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Bristol Township School District, Respondents.

Reva Kaplan, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 13, 1979, before Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Leon W. Silverman,* with him *Dennis L. Friedman,* for appellants.

*Michael D. Klein,* Assistant Attorney General, with him *Gary J. Marini,* Assistant Attorney General, *Richard Wagner,* Chief Counsel and *Edward G. Biester, Jr.,* Attorney General, for appellees.

OPINION BY JUDGE WILKINSON, JR., January 16, 1980:

Here consolidated for our consideration are the appeals of petitioners (claimants), substitute teachers for the School District of Bristol Township (Bristol),

from three separate orders of the Unemployment Compensation Board of Review (Board), denying benefits for periods of summer vacation. We affirm.

## 1861 C.D. 1978

Claimant, Reva Kaplan, had served Bristol as a substitute teacher for ten consecutive years prior to filing for unemployment compensation benefits on June 19, 1977. Adequate evidence appears of record to support the Board's conclusion that an implied agreement existed between the claimant and Bristol with regard to future substitute teaching, making benefits unavailable pursuant to Section 203(b) of the Emergency Jobs and Unemployment Assistance Act of 1974, 26 U.S.C. §3304 note. The record likewise supports the Board's finding that claimant was not realistically attached to the labor force and therefore unavailable for suitable work pursuant to Section 401(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §801(d).

Since the autumn of 1967, claimant has served as a substitute teacher for Bristol. She completed a form during the summer of 1977 indicating her intention to continue that ongoing relationship during the following school year, in anticipation of which her name was placed on the substitute teacher list for the following year.

The instant case is indistinguishable from and therefore controlled by the recent case of *Ellman v. Unemployment Compensation Board of Review,* 47 Pa. Commonwealth Ct. 179, 407 A.2d 478 (1979). If anything, we find the present factual setting, with its demonstration of a long-standing relationship, even more compelling. In the absence of some evidence to indicate the existence of a substantial reason for believing she would not be rehired in September 1977 the

claimant cannot prevail. *See Sude v. Unemployment Compensation Board of Review,* 43 Pa. Commonwealth Ct. 533, 402 A.2d 1122 (1979). We accordingly affirm the Board's order denying benefits in the above case.

The remaining two appeals are both presented by claimant Barbara Louderback and will be considered chronologically.

### 1645 C.D. 1978

The first of Ms. Louderback's claims seeks benefits for compensable weeks ending June 18 and June 25, 1977. Claimant last worked for Bristol as a substitute teacher on June 13, 1977, approximately four days before the official end of school. Following an award of benefits by a referee, the Board reversed finding claimant and Bristol had an implied agreement for future employment[1] and that Ms. Louderback intended and expected to return to work the following September thereby making her unavailable for suitable work.[2]

Claimant here, as in the case of Ms. Kaplan, presents a significant history of substitute teaching for Bristol and other districts. She also indicated to Bristol her intention to continue substitute work. Claimant attempts to demonstrate the existence of circumstances which cast a substantial doubt on the likelihood of future employment, *i.e.* the lay-offs of twenty-six regular full-time teachers at the close of the 1976-77 school year who would have priority over claimant for future substitute teaching assignments.

Although such a circumstance is relevant evidence with respect to the likelihood of continued employment it is not alone determinative. Substitute teaching is by

---

[1] Pursuant to Section 203(b) of the Emergency Jobs and Unemployment Assistance Act of 1974.

[2] Pursuant to Section 401(d) of the Unemployment Compensation Law.

its nature inherently indefinite depending as it does on the occurrence of unforseen vacancies in the teaching faculty. All that can be said with certainty about the effect of the lay-offs is that the opportunities for substitute teaching for persons in claimant's position may be diminished in the coming year.[3] So long as the claimant desires and intends to continue substitute work and Bristol expects to offer such work when it becomes available, the employment relationship of a substitute teacher remains viable. The record here fully reveals the intention of both parties to maintain that relationship; the Board's order in the instant case will accordingly be affirmed.

## 2511 C.D. 1978

The final appeal, and the second presented by claimant Barbara Louderback, presents a somewhat different factual and legal setting. The Board denied benefits on the authority of Section 402.1 of the Unemployment Compensation Law, 43 P.S. §802.1[4] which provides in pertinent part:

(1) With respect to service performed after December 31, 1977, in an instructional . . . capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, . . . to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

---

[3] Claimant testified to having taught 150-160 days as a substitute during the preceding year.

[4] Added by Act of July 6, 1977, P.L. 41.

Claimant, for purposes of this appeal, was last employed from March 28 to June 23, 1978 under a letter of agreement from Bristol which terminated naturally at the end of the school year. The issue here is simply whether claimant had a reasonable assurance of reemployment the following September. The record evidence on this point is conflicting. Claimant stated flatly that she had no such assurances and provided documentation concerning substantial teacher lay-offs that could work to diminish claimant's employment opportunities. The Board also had for its consideration Bristol's employment status report indicating claimant had a reasonable assurance of continued employment, signed by Bristol's personnel manager. Additionally, as encountered in the earlier cases herein, claimant had submitted a statement to Bristol reflecting her intention to do substitute work the next year.

While the factual setting here presents a close case the ultimate finder of fact is of course the Board and we cannot say that it capriciously disregarded the evidence in reaching its conclusion that claimant had reasonable assurances of continued work. The peculiar nature of substitute work discussed in the context of this claimant's earlier claim, No. 1645 C.D. 1978, *infra,* is equally pertinent in this context in determining the quality of a substitute teacher's assurances of continued employment. We accordingly affirm the Board's denial and enter the following

ORDER

AND Now, January 16, 1980, the orders of the Unemployment Compensation Board of Review at Decision No. B-159359 dated June 22, 1978; Decision No. B-159353 dated June 22, 1978; and Decision No. B-164912 dated October 11, 1978 are hereby arrirmed.

This decision was reached prior to the expiration of the term of office of Judge DiSALLE.